UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re** <br><br> **PETITION OF LATAM GEOTHERMAL CORP. FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** | Case No. _____ |

### *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 AND SUPPORTING MEMORANDUM OF LAW

Applicant Latam Geothermal Corp. ("**Applicant**" or "**Latam Geo**") respectfully submits this *Ex Parte* Application for Judicial Assistance, in Obtaining Documentary Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (the "**Application**"). In support, Applicant respectfully states as follows:

### INTRODUCTION

1. The facts relevant to this Application are set forth below and in the Declaration of Alecia Johns (the "**Johns Declaration**," attached hereto as **Exhibit A**). The facts stated in that declaration are incorporated herein by reference.

2. This is an *ex parte* application in aid of contemplated winding up proceedings (the "**Cayman Proceedings**") between Applicant and the following two contemplated respondents: Central America Energy Holdings Corp. ("**CAEH**" or "**the Company**"), a Cayman Islands incorporated entity and holding company of Momotombo Power Company (**"MPC"**), a Cayman Islands incorporated entity, and Grupo Integra de CentroAmerica SA ("**Integra**"), a Panamanian entity. These proceedings stem from the exclusion of the Applicant from the affairs of the Company in a manner which is oppressive and prejudicial to the interest of the Applicant as a

shareholder and lender. More specifically, various individuals and entities related to both the Company and Integra have conspired to seize—through shocking, blatant fraud—the apparatus, proceeds, and assets of the Company to deprive the Applicant of its ownership rights and to avoid repaying an $8.6 million loan.

3. Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain documentary evidence from The Clearing House Payments Company L.L.C. (the "**Clearing House**"), which resides in or is found in this District. Specifically, the Application seeks to serve a subpoena listing a number of individuals and entities related to various individuals and entities associated with Integra and its sole beneficial owner. Applicant expects the evidence sought will reveal details about the use and disposition of the proceeds and assets of the Company in support of the just and equitable winding up proceeding to be shortly commenced by the Applicant before the Grant Court of the Cayman Islands.

## FACTUAL BACKGROUND

### I. The Relevant Parties

4. CAEH was registered in the Cayman Islands on October 8, 2013, as an exempted limited company. Johns Declaration ¶ 7. CAEH has two shareholders, Latam Geo and Integra. Latam Geo is owned by a sole beneficial owner, Arturo Gamboa Rullan ("**Gamboa**"). *Id.* Integra is owned by a sole beneficial owner, Alvaro Baltodano Monroy ("**Baltodano**"). *Id*.

5. CAEH is controlled by a Board of Directors. Johns Declaration ¶ 8. Since its incorporation, that Board of Directors has been controlled by a single director, Oscar Montes ("**Montes**"). *Id.* Montes and Baltodano have had a close business relationship since 2010, with Montes serving as a director of several other entities related to or owned by Baltodano, including Integra, and also serving as executive legal vice-president of Baltodano's group of companies. *Id*.

CAEH has a fully owned subsidiary, Momotombo Power Company ("**MPC**"), which has a Nicaraguan Branch ("**MPC Nicaraguan Branch**" or the "**Underlying Power Company**").

**II.     Overview of the Underlying Fraud**

6.     These Cayman Proceedings arise out of complex business relationships formed over more than a decade. In 2013, Gamboa provided $8.6 million of funding for the purchase of a geothermal power company in Nicaragua. Johns Declaration ¶¶ 7–15. In 2015, Gamboa, Baltodano, and the related entities restructured their relationship. To strengthen Gamboa's guarantees, a new entity, CAEH, was created to hold the shares of MPC. *Id* ¶¶ 23, 16–21, 31–32. Latam Geo, controlled by Gamboa, and Integra, controlled by Baltodano, were the primary shareholders of CAEH. *Id.* ¶ 18. It was agreed in writing that CAEH would prioritize paying off the remainder of the loan. *id.* ¶¶ 17, 20.

7.     Integra and Baltodano failed to honor their side of the bargain. Gamboa received frustratingly, personally or through his corporate entity, sporadic and insignificant payments on the loan debt. Johns Declaration ¶ 23; *see also id.* ¶¶ 28–32. CAEH received MPC's audited financial documents and reports from Montes, showing inflated and ballooning costs, which included large service and consulting fees. *Id.* Unbeknownst to Gamboa and Latam Geo, Baltodano, through Montes, exerted complete *de facto* control over CAEH, its wholly owned subsidiary, and its Nicaraguan branch which owns the geothermal power company. *Id.* ¶ 9. Eventually, Gamboa and Latam Geo learned that Baltodano was embezzling tens of millions of dollars from the Underlying Power Company through several entities—controlled by Baltodano or other entities he owned or controlled—incorporated in numerous countries abroad. *Id.* ¶¶ 30–39. Some of these payments were disguised as service and consulting fees, while others were accomplished through unilateral dividends paid to Baltodano—in violation of both the loan

3

agreements and CAEH's stockholders' agreement—disguised or obfuscated on doctored "audited" financial reports as other costs. *Id*. ¶ 30–39.

8. Due to Baltodano's complete control over the apparatus of CAEH, Latam Geo and Gamboa intend to proceed with a just and equitable winding up of CAEH to attempt to recover on the as-yet unpaid loans. Johns Declaration ¶¶ 40–41. That contemplated foreign proceeding is the basis of this application.

### A. The Beginning: The Initial 2013 Loan and Shortfalls Resulting in CAEH's Incorporation

9. On May 30, 2013, Gamboa entered into an initial loan agreement with, among other parties and entities, Baltodano (the "**2013 Loan**"). Johns Declaration ¶ 10.

10. The 2013 Loan involved an advance of $8.6 million by Gamboa for the purchase of the Momotombo Power Company ("**MPC**"), an entity which operates a geothermal power plant in Leon, Nicaragua. Johns Declaration ¶¶ 10–15.

11. In 2015 the loan was amended by a set of new agreements on January 14, 2015 (the "**2015 Loan Agreements**"), which created a new structure for the company and consolidated Gamboa's guarantees and rights. Johns Declaration ¶¶ 16, 23. This structure was as follows:

   a. CAEH was incorporated to hold 100% of the shares of MPC. Johns Declaration ¶ 16.

   b. CAEH would assume the obligation of payment under the loans, evidenced by the execution of a promissory note in favor of Gamboa. Johns Declaration ¶¶ 16, 17.

   c. Latam Geo and Integra would each hold 42.5% of the shares in CAEH, with another small shareholder, Pablo Monroy ("**Monroy**"), holding the remainder. Johns Declaration ¶¶ 16, 18.

d.  Additionally, Gamboa would hold a lien on all shares as security for the Loan. Johns Declaration ¶ 16.

12. The 2015 Loan Agreement was accompanied by a host of security documents executed by Baltodano and Integra in favor of Latam Geo and Gamboa in various permutations (the "**Credit Documents**"). *See* Johns Declaration ¶ 17–21.

13. To further strengthen the guarantees and securities on Gamboa's Loan additionally, on January 14, 2015, a stockholders' agreement was concluded between Integra, Latam Geo, and Monroy ("**Stockholders Agreement**"). Johns Declaration ¶ 20. The Stockholders Agreement declared that one of the purposes of CAEH was to repay the outstanding debt to Gamboa. *Id*.

14. Under the Stockholders Agreement, Latam Geo was given broad rights, including the right to elect all directors so long as the loan remained unpaid and the sole ability to provide requisite approval over a number of company activities. Johns Declaration ¶ 21.

B. **Baltodano Usurps Control Over CAEH and Siphons Its Assets**

15. Despite the extensive safeguards put in place in the Credit Documents to protect Latam Geo and Gamboa, Baltodano used various artifices and entities to abscond with funds that should have been earmarked for payment to Latam Geo and Gamboa. Johns Declaration ¶ 22.

16. As a result of that usurpation, the loans to Gamboa remain unpaid. Johns Declaration ¶ 23.

17. In 2018, MPC obtained a loan of $25 million from a German bank called Deutsche Investitions-und Entwicklungsgesellschaft mbH ("**DEG**"), on which it has defaulted and restructured several times. Johns Declaration ¶¶ 25–27. It was through discussions with DEG regarding this loan in March of 2021—during which DEG provided a copy of MPC's 2018

financial statements—that Latam Geo and Gamboa learned of incongruities with the 2018 financial statements that MPC had given to Gamboa. Johns Declaration ¶¶ 31–32.

18. The 2018 Financial Statement that MPC provided to DEG shows numerous important differences and changes from the 2018 Financial Statement MPC provided to Latam Geo and Gamboa. Johns Declaration ¶¶ 31–32. The version provided to Gamboa concealed: (i) improper dividend payments in violation of the Credits Documents and the Stockholders Agreement; (ii) improper loans to Baltodano; and (iii) loans and contracts to entities controlled or owned by Baltodano, some of which exceed $1 million. *Id*.

19. A review of MPC's financial statements and financial information sent by Montes for the years 2015 to 2020 reveal a number of related-party transactions for loans and payments for alleged services to entities that appear to be controlled or owned by Baltodano, including Comercial Agricola del Sur, S.A. ("**COMASUR**"), Cañas de Nicaragua, S.A. ("**CADENICSA**") and Integra Capital Group, as well as personal loans and payments to Baltodano and his family members. Johns Declaration ¶¶ 30–39.

20. Additionally, a review of MPC's financial statements for 2020, which are of similarly dubious veracity, revealed transfers and accounts payable to two BVI entities, Geothermal International Services Ltd ("**GIS**") and Geothermal Engineering Group Ltd ("**GEG**") (together the "**BVI Companies**"). Johns Declaration ¶¶ 33–37. Subsequent inquiry into the BVI Companies through a Norwich Pharmacal Order revealed that Montes is the beneficial owner, shareholder, and director of each, that MPC had previously paid the registered agent fees for these entities, and that executives at MPC were signatories on bank accounts held in the name of GIS. Johns Declaration ¶¶ 34–36.

21. Due to the close relationship between Montes and Baltodano, it is believed that Montes is holding these companies on behalf of Baltodano. Johns Declaration ¶ 37.

22. Further, Baltodano has admitted in other proceedings that numerous companies partially or wholly owned by Baltodano, and on which Montes is either a director and/or holder of extensive powers of attorney, have received payments from MPC since 2013. Johns Declaration ¶ 38.

23. Gamboa and Latam Geo have attempted to exercise their rights under the various Credit Documents, as well as under the Stockholders Agreement, including multiple requests to MPC for unaltered financial documents and information, but to no avail. *See* Johns Declaration ¶¶ 28–29

24. Gamboa has initiated several actions to attempted to recover the loan proceeds. Johns Declaration ¶ 23. Gamboa filed a lawsuit in 2023 against Baltodano in the Circuit Court of Florida for recovery of sums under a guaranty signed by Baltodano as part of the Credit Documents. Johns Declaration ¶ 23–24. Additionally, Gamboa is proceeding with an arbitration against CAEH in the American Arbitration Association. *Id*. However, neither of these proceedings involve Latam Geo, the Applicant here. *See id*. Latam Geo's just and equitable winding up of CAEH is therefore essential to tracing and recovering the related-party transactions described above.

## ARGUMENT

### I.  Standard for Granting Relief.

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 "provide[s] for assistance

in obtaining documentary and other tangible evidence as well as testimony." *Id*. at 248. The statute reads, in pertinent part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a) (2016).

Courts have distilled § 1782's language into a two-part inquiry: (1) whether a district court is *authorized* to grant relief and (2) whether it *should* grant relief in its broad discretion. The Second Circuit has broken down the statutory authorization inquiry into three elements:

> A district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*Mees v Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *Optimal Inv. Servs., S.A. v. Berlamont*, 773 F.3d 456, 460 (2d Cir. 2014); *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6, 8 (2d

Cir. 2014) (summary order); *accord Intel*, 542 U.S. at 256-63 (addressing the discretionary factors).

Next, once a district court has determined that it is authorized to grant relief, it is free to grant relief in its broad discretion. The court's discretion is guided by the discretionary factors recited by the Supreme Court in *Intel*:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence may be "unobtainable absent § 1782(a) aid";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the § 1782(a) request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65. This discretion is further informed by the twin Congressional aims of § 1782, "which are to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." *In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (citing *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998)).

District courts may, and indeed typically do, grant § 1782 on an *ex parte* basis. *E.g., In re Vinmar Overseas, Ltd.*, No. 24 Misc. 164 (KPF), 2024 U.S. Dist. LEXIS 98217 (S.D.N.Y. May 30, 2024) (granting *ex parte* application under § 1782 for discovery from the Clearing House); *see also In re Ex Parte Porsche Automobil Holding SE v. John Hancock Life Ins. Co. (USA)*, 985 F.3d

9

115, 118 (1st Cir. 2021) (affirming enforcement of § 1782 relief originally granted *ex parte*); *see also In re Clerici*, 481 F.3d 1324 (11th Cir. 2007) (affirming denial of motion to vacate order granting *ex parte* § 1782 application); *In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011) ("most § 1782 applications (at least in this district) are filed and decided ex parte"); *In re Eurasian Bank Joint Stock Co.*, No. 3:15-mc-106-L-BN, 2015 WL 6438256, *2 (N.D. Tex. October 21, 2015) ("the Court notes that *ex parte* filing of an application for discovery under 28 U.S.C. § 1782 is permissible.").

As numerous courts have commented, there are no due process concerns with granting § 1782 relief *ex parte* because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *In re Bleach, Inc.*, No. 24-mc-80021-PCP, 2024 U.S. Dist. LEXIS 78886, at *3 (N.D. Cal. Apr. 30, 2024) (citing *IPCom GmbH & Co, KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash [a subpoena] pursuant to Federal Rule of Civil Procedure 45(c)(3).") (citing further authority therein) (summary order).

As demonstrated below, Applicant's *ex parte* Application satisfies the statutory requirements and the discretionary factors militate in favor of granting judicial assistance, and, therefore, this Court should grant the relief sought in the Application.

**II.     The Applicant Meets the Mandatory Requirements for granting relief.**

    **C.  The Clearing House Resides or Is Found in This Jurisdiction.**

The court's authority to compel discovery under § 1782 extends to any "person," including both individuals and entities, that "resides or is found in" the district in which the application is

10

made. 28 U.S.C. § 1782(a). An entity "resides or is found in" this District if this Court can exercise personal jurisdiction over it. *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (the "reside or is found" statutory "language extends § 1782's reach to the limits of personal jurisdiction consistent with due process").

The Clearing House is headquartered in the Southern District of New York. Johns Declaration ¶ 43. Thus, this Court has personal jurisdiction over the Clearing House because they are located in and regularly transact business in this District.

Accordingly, Applicant satisfies the first requirement under § 1782.

### D. The Discovery Sought is For Use in a Proceeding in a Foreign Tribunal.

Applicant seeks to use the sought discovery in the contemplated just and equitable winding up proceeding in the Cayman Islands, which satisfies the "for use" requirement of the § 1782. The "for use" in a foreign proceeding requirement of the statute "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel*, 542 U.S. at 258. Indeed, Congress specifically removed the word "pending" from the statute in 1964 to allow would-be litigants to gather evidence before proceedings are filed. S. Rep. No. 1580, 88th Cong., 2d Cess., 7 (1964). Actions reasonably contemplated at the time a petition is filed therefore meet the statute's "for use" requirement. *In re Furstenberg Fin. SAS*, 785 F. App'x 882, 884–85 (2d Cir. 2019) (citing *Certified Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015)). The filing of a declaration swearing the intent to file suit and articulating a specific legal theory for that suit satisfies the requirement. *In re Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619 (S.D.N.Y. 2018), *aff'd* 785 F. App'x 882 (2d Cir. 2019).

As stated, Applicant intends to use the requested discovery from the Clearing House to further understand and demonstrate the nature and quantum of improper transactions regarding the

misappropriated assets and proceeds perpetrated by Baltodano, Integra, and other associated entities. Johns Declaration ¶ 45. Because a wind up proceeding in the Cayman Islands involves the liquidation and distribution of the subject corporation's assets, including improperly transferred assets, the ultimate ownership and control of such assets will be at issue in the Cayman Proceedings. *Id.* The information sought from the Clearing House consists of wire transfer data showing payments between companies related to the Cayman Proceeding that will lead to information showing the movement and location of such assets; thus, this information will be for use in support of the Cayman Proceedings. In short, Applicant seeks to use the information obtained to detail the extent of the misappropriation and the ultimate location of the misappropriated funds.

Although Arturo Gamboa is proceeding with other actions in the United States arising from similar facts—namely: (1) a Florida Circuit Court action against Baltodano under a Guaranty Agreement that is one of the Credit Documents; and (2) an arbitration against CAEH for breach of the Loan Agreement (collectively, the "**Other Proceedings**")—those proceedings are narrower in scope. Johns Declaration ¶ 23. Latam Geo is not a party to either suit and neither is Integra, entities which are only implicated concurrently in the contemplated winding up petition. *See id*. ¶ 23. Additionally, there is no complete unity of interests between the Other Proceedings and the contemplated Cayman Proceedings. For instance, the Other Proceedings would not entitle either Latam Geo or Gamboa to trace and recover proceeds from the related-party transactions described here. Furthermore, courts in this jurisdiction do not routinely impose a restriction that the material could *only* be "for use" in a foreign proceeding. *See In re in re Associacão dos Profissionais dos Correios*, No. 22-MC-132 (RA), 2024 U.S. Dist. LEXIS 174066, at *11 (S.D.N.Y. Sep. 25, 2024) ("[T]he Court does not read into the 'for use' prerequisite a categorical restriction on requesting

material that may *also* be 'for use' in a domestic proceeding. Accordingly, that requested material may be 'for use' in a U.S. proceeding against BNY Mellon does not mean it is not also 'for use' in the Brazilian proceeding"); *cf. Mees*, 793 F.3d at 298 (holding that the "for use" requirement is satisfied when it is indicated that "something will be employed with some advantage or serve some use in the [foreign] proceeding").

### E. The Applicant Is an Interested Person.

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance . . . qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256-7 (2d Cir. 2004) (internal citations omitted). "The legislative history to § 1782 makes plain that 'interested person' includes a party to the foreign litigation." *See Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (internal citations omitted). Here, Applicant is an "interested person" in its capacity as a party to the contemplated Cayman Proceedings. Hence, the Applicant meets the third statutory requirement under 28 U.S.C. § 1782(a).

### III. This Court Should Exercise Its Discretion in Favor of Granting Relief.

As noted above, once the District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. As set forth below, the discretionary factors identified by the Supreme Court in *Intel* weigh heavily in favor of granting the relief requested herein. *See Intel*, 542 U.S. at 264-65.

First, the Clearing House is beyond the jurisdiction of a Cayman court and is not anticipated to be a party to the contemplated Cayman Proceedings. Johns Declaration ¶ 44. There is no procedure for obtaining the sought discovery from the Clearing House other than through this Application. Accordingly, this factor weighs in favor of granting the Application. *See Intel*, 542

U.S. at 264 ("the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.").

Second, Cayman counsel has advised that there is no indication that the courts in Cayman would not be receptive to the documentary evidence sought through the instant Application. Johns Declaration ¶ 47. Indeed, Cayman courts appear receptive to evidence obtained under § 1782. *Id*. ¶¶ 47–48.

Third, Cayman counsel has advised the Applicant that the evidence sought through the instant Application would likely be admissible or lead to admissible evidence and does not otherwise circumvent any proof-gathering restrictions in the Cayman Islands. Johns Declaration ¶ 47.

Fourth and finally, the Application is not unduly intrusive or burdernsome. The proposed subpoena to the Clearing House, attached as **Exhibit B** for the Court's review, is limited in scope. First, it is limited to the time period beginning on either the May 30, 2013, date of the 2013 Loan or from the Clearing House's applicable document and/or information retention period to the present. It is also limited to CHIPS payment messages referencing Baltodano and specifcially named entities or individuals that are known to be affiliated with and/or directly or indirectly owned and controlled by Baltodano. Johns Declaration ¶ 49.

As such, each discretionary factor identified by the *Intel* court waighs in favor of granting the Application.

## **CONCLUSION**

In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met and each discretionary factory identified by the *Intel* Court weighs in favor of granting the Application.

WHERERFORE, Applicant respectfully requests that this Court enter an Order substantially in the form attached hereto as **Exhibit C**:

(a) exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this *Ex Parte* Application for Judicial Assistance;

(b) granting the Applicant's leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas, in substantially the same form as the Sample Subpoena attached as **Exhibit B** to this Application;

(c) reserving jurisdiction to grants Applicant's leave to serve follow-up subpoenas on any other person or entity as may be necessary to obtain the evidence described in the Application; and

(d) granting such other and further relief as this Court deems just and proper.

Date: January 3, 2025                                   Respectfully submitted,

**SEQUOR LAW, P.A.**

By:   */s/ Joseph B. Rome*
Joseph B. Rome, Esq.
New York Bar No. 5198247
1111 Brickell Avenue, Suite 1250
Miami, FL  33131
Tel: (305) 372-8282
jrome@sequorlaw.com


*/s/ Edward H. Davis*
Edward H. Davis (*pro hac vice* forthcoming)
1111 Brickell Avenue, Suite 1250
Miami, FL  33131
Tel: (305) 372-8282
edavis@sequorlaw.com

*/s/ Robert B. Kearney*

Robert B. Kearney (*pro hac vice* forthcoming)
650 Massachusetts Avenue, N.W., Suite 600
Washington, DC 20001
Tel: (305) 372-8282
rkearney@sequorlaw.com

*Counsel for Petitioner*